## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| BRIAN CERDELLI and LAURA CERDELLI, <br><br> *Plaintiffs,* <br><br> v. <br><br> NASSAU FINANCIAL FEDERAL CREDIT UNION, and GREEN DOT CORPORATION dba GO2BANK <br><br> *Defendants.* | Civil Action No.: 23-cv-5884 <br><br> **FIRST AMENDED COMPLAINT** <br><br> **FILED AS A MATTER OF COURSE PURSUANT TO RULE 15(A)(1)** <br><br> **JURY TRIAL DEMANDED** |

Plaintiffs Brian Cerdelli and Laura Cerdelli, by and through the undersigned attorneys, allege and complain of Defendant Green Dot Corporation d/b/a/ GO2Bankas follows:

### PRELIMINARY STATEMENT

1.  Brian Cerdelli and Laura Cerdelli ("Plaintiffs") are victims of identity theft.

2.  On or about March 15, 2023, Plaintiffs discovered a series of unauthorized transactions from their account with Nassau Financial Federal Credit Union ("NFFCU" or "the Credit Union") ending in 86639 (the "Account") to an unknown account or accounts at Green Dot Corporation d/b/a GO2Bank.

3.  The unknown Green Dot Bank account or accounts were opened in Plaintiff Brian Cerdelli's name by an unknown perpetrator without authorization.

4.  The perpetrator made several transactions (the "Unauthorized Transactions"), stealing a total of $6,000 from the Account (the "Stolen Funds").

5.  Plaintiffs immediately disputed the Unauthorized Transactions and, in spite of the fact that the transactions were inconsistent with the Plaintiffs' account history, Defendants denied Plaintiffs' disputes.

6.     Plaintiffs brings claims against Defendant for violations of the Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. § 1693, *et seq.*, and New York General Business Practice § 349 ("NYGBL § 349") and for conversion.

7.     Plaintiff named NFFCU in his original complaint and settled with NFFCU prior to the filing of this amended complaint.

## JURISDICTION AND VENUE

8.     This Court has jurisdiction pursuant to 15 U.S.C. §1693 (Electronic Fund Transfer Act).

9.     The Court has authority to issue a declaratory judgment pursuant to 28 U.S.C. § 2201.

10.    This Court has supplemental jurisdiction over the Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(a).

11.    Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District, and Defendants regularly do business in this District.

## PARTIES

12.    Plaintiffs are natural persons and citizens of New York residing in Nassau County, New York.

13.    Plaintiffs are "consumers" as defined by the EFTA, 15 U.S.C. § 1693a(6).   Their checking and savings account with Nassau Financial Federal Credit Union was used for personal, family, or household purposes.

14.    Go2bank is a mobile online banking application operated by Green Dot Corporation ("GO2Bank"), a bank formed under the laws of the United States that was, at all times relevant to this Complaint, a financial institution as defined by the EFTA, 15 U.S.C. § 1693a(9).

15.     Green Dot Corporation is a "service provider" as defined by EFTA Regulations that enables access to consumer accounts at financial institutions through an "access device", its online banking application.  12 CFR § 1005.14(a).

16.     Nassau Financial Federal Credit Union ("NFFCU" or the "Credit Union") is a credit union formed under the laws of the United States and was, at all times relevant to this Complaint, a financial institution as defined by the EFTA, 15 U.S.C. § 1693a(9).  NFFCU was dismissed by Notice of Voluntary Dismissal on September 19, 2023.

## FACTS

17.     On March 15, 2023, Plaintiffs received a text message from the Credit Union's Fraud Department alerting them to a potentially fraudulent purchase at an Apple Store in Colorado of $528, made from their account.

18.     Subsequently, Plaintiffs received a phone call from an individual purporting to be a fraud investigator from the Credit Union.  The caller, who asserted familiarity with the fraud alert, requested that Plaintiffs delete his user ID and informed him that during the investigation, he would have no access to his account.

19.     Relying on the caller's representation, Plaintiffs complied with the instructions and deleted the user ID.  However, it was later discovered that on March 17, 2023, funds from Plaintiffs' NFFCU savings account were transferred to their NFFCU checking account, and $2,400 was subsequently withdrawn and sent to an account at GO2Bank fraudulently opened in Plaintiff Brian Cerdelli's name.

20.     Although the Credit Union detected an unexpected transaction type, no contact was made with Plaintiffs before the funds were transferred.

21.     On March 21, 2023, the fraudster transferred Social Security funds and additional savings from Plaintiffs' accounts to his checking account, totaling $3,600.

22.     The unexpected transaction type(s) flagged by NFFCU are unauthorized transactions made using Green Dot's GO2Bank application and transferred funds to an account fraudulently established in Plaintiff's name.

23.     As a result of the unauthorized transactions, the Credit Union froze Plaintiffs' account and provided them with paperwork to initiate the return of the funds.

24.     Plaintiffs filed a dispute with the Credit Union and signed an affidavit in support of their claims.

25.     Despite Plaintiffs' efforts to resolve the matter, both the Credit Union and Go2Bank refused to return the funds.  The Credit Union verbally communicated its decision on March 29, 2023, following Plaintiffs' affidavit filing on March 27, 2023.

26.     Go2Bank refused to return the funds, claiming that ACH transactions were performed and asserting that no password was provided.  However, Plaintiffs assert that they have only used ACH transactions for bill payments and not to send funds to an outside bank.

27.     In response to the Defendants' refusal, Plaintiffs filed a criminal complaint with the Nassau County District Attorney's office, seeking legal intervention.

28.     On April 11, 2023, Plaintiffs were asked to sign indemnification and/or release forms provided by Green Dot, but declined, as the forms appeared to be intended to hold Green Dot harmless.

29.     Despite opening new accounts, Plaintiffs still retain access to their original accounts, which raises concerns about the security and integrity of the Credit Union's systems.

30.     The Credit Union was able to recover $3200.00, and the remaining unresolved amount under this dispute is $2800.00.

## FIRST CLAIM FOR RELIEF

**(Financial Institution, Electronic Fund Transfers Act, 15 U.S.C. § 1693 *et seq*.)**

31.     Plaintiffs repeat and re-allege each of the foregoing paragraphs of this Complaint as if fully set forth herein.

32.     Per the EFTA, Regulation E, and Regulation E's Official Interpretations, Defendant bears the responsibility for unauthorized transfers and withdrawals such as the ones in question.

33.     Pursuant to 15 U.S.C. § 1693g(a), "Unauthorized electronic fund transfers; limit" states in relevant part as follows:

> In no event. . . shall a consumer's liability for an unauthorized transfer exceed the lesser of-
>
> (1) $50; or
>
> (2) the amount of money or value of property or services obtained in such, unauthorized electronic fund transfer prior to the time the financial institution is notified of, or otherwise becomes aware of, circumstances which lead to the reasonable belief that an unauthorized electronic fund transfer involving the consumer's account has been or may be effected.

34.     This cap is increased to $500 dollars where the consumer waits more than two business days after becoming aware of the unauthorized transaction to notify the financial institution. 15 U.S.C. 1693g(a)(2).

35.     The rules are elucidated in Regulation E, 12 C.F.R. § 1005.6(b):

> (b) Limitations on amount of liability. A consumer's liability for an unauthorized electronic fund transfer or a series of related unauthorized transfers shall be determined as follows:
>
> (1) Timely notice given. If the consumer notifies the financial institution within two business days after learning of the loss or theft of the access device, the consumer's liability shall not exceed the

5

lesser of $50 or the amount of unauthorized transfers that occur before notice to the financial institution.

(2) Timely notice not given. If the consumer fails to notify the financial institution within two business days after learning of the loss or theft of the access device, the consumer's liability shall not exceed the lesser of $500 or the sum of:

(i) $50 or the amount of unauthorized transfers that occur within the two business days, whichever is less; and

(ii) The amount of unauthorized transfers that occur after the close of two business days and before notice to the institution, provided the institution establishes that these transfers would not have occurred had the consumer notified the institution within that two-day period.

36.     The EFTA places the burden of proof on the financial institution to demonstrate that challenged transfers were authorized.  15 U.S.C. § 1693g(b).

37.     Defendant cannot meet its burden of proof here, where Plaintiffs:

a)  Promptly disputed the transactions;

b)  Provided details regarding the possession of their card(s);

c)  Provided a sworn affidavit;

d)  Provided a police report;

e)  Have no criminal history;

f)  Have no history of filing false disputes; and

g)  The thefts are inconsistent with Plaintiffs' pattern of card use.

38.     Defendant also violated the EFTA by failing to provide any meaningful explanation of the grounds upon which it relied in denying the Plaintiffs' claim. 15 U.S.C. § 1693f(d).  *See* CFPB Supervisory Highlights, Issue 22, Summer 2020, Section 2.3.3 ("Financial institutions must go beyond just providing the findings to actually explain or give the reasons for or cause of those findings.").

39.     Defendant also violated the EFTA by failing to provide Plaintiffs with notice of their rights to request reproductions of all documents which Citibank relied on to conclude that an error did not occur, as required under 15 U.S.C. § 1693f(d).

40.     Defendant did not conduct a good faith investigation regarding the stolen funds.

41.     Defendant did not have a reasonable basis for believing the account was not in error based on the evidence Plaintiffs provided to Defendants.

42.     Specifically, Defendant's conduct as set forth herein constitutes a failure to investigate in good faith and a failure to establish a reasonable basis for believing that Plaintiffs' account was not in error, and also constitutes the knowing and willful conclusion that the account was not in error, and a knowing and willful when such conclusion could not reasonably have been drawn from the available evidence, and for this reason constitutes a violation of 1693f(e), entitling Plaintiffs to treble damages in addition to all other relief sought herein.

43.     Defendant's conduct as set forth herein constitutes a knowing and willful denial of its obligations to Plaintiffs under the EFTA where it is clear that, if an EFT was initiated by a person other than a consumer without actual authority to initiate the transfer, the EFT is unauthorized even where the consumer does not have a relationship with, or does not recognize, the non-bank payment provider.  *See* Consumer Fin. Prot. Bureau, Electronic Fund Transfers FAQs, *available at* www.consumerfinance.gov (see question 3 of "Error Resolution: Unauthorized EFTs").

44.     Defendant violated the EFTA by attempting to obtain a signed waiver and/or indemnification agreement from the Plaintiffs is an independent violation of the EFTA as Defendant impermissibly sought to limit the Plaintiffs' rights under the EFTA.  15 U.S.C. § 1693l.

45.     As a direct and proximate result of Defendant's conduct, Plaintiffs have suffered actual damages, including but not limited to past and future monetary loss, past and future mental distress, emotional anguish, and other damages that will be presented to the trier of fact.

46.     As a direct and proximate result of Defendant's. violations of the EFTA, Plaintiffs is entitled to declaratory judgment, actual damages, statutory damages, treble damages, costs and reasonable attorneys' fees.

## SECOND CLAIM FOR RELIEF

### (Service Provider - Electronic Fund Transfers Act, 15 U.S.C. § 1693 *et seq*.)

47.     Plaintiffs repeat and re-allege and incorporate by reference the foregoing paragraphs as if fully restated herein.

48.     Per the EFTA, Regulation E, and Regulation E's Official Interpretations, Defendant bears the responsibility for unauthorized transfers and withdrawals such as the ones in question.

49.     Defendant is a "service provider" that provides EFT services to consumers through its online application, GO2Bank.  12 CFR § 1005.14(a).

50.     Defendant's GO2Bank online application is an "access device" used to access consumers' accounts at financial institutions.  12 CFR § 1005.14(a).

51.     Defendant Green Dot permitted an unknown perpetrator to gain unauthorized access to Plaintiffs' accounts at NFFCU by fraudulently using its GO2Bank online application.

52.     Defendant Green Dot permitted the unknown perpetrator to transfer funds between Plaintiffs' checking and savings accounts, and thereafter to transfer $6000.00 to an unknown fraudulent account or accounts established in Plaintiff Brian Cerdelli's name.

53.     Defendant violated the EFTA by failing to provide any meaningful explanation of the grounds upon which it relied in denying the Plaintiffs' claim. Regulation E, 12 CFR § 1005.11.

54.     Defendant violated the EFTA by failing to correct the error and reimburse Plaintiffs. 12 CFR § 1005.11.

55.     Defendant failed to take reasonable steps to prevent unauthorized access to Plaintiffs' accounts.  12 CFR § 1005.6.

56.     As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered actual damages, including but not limited to past and future monetary loss, past and future mental distress, emotional anguish, and other damages that will be presented to the trier of fact.

57.     As a direct and proximate result of Defendant's. violations of the EFTA, Plaintiffs is entitled to declaratory judgment, actual damages, statutory damages, treble damages, costs and reasonable attorneys' fees.

### THIRD CLAIM FOR RELIEF

### (Deceptive Acts and Practices Unlawful, NYGBL § 349 *et seq.*)

58.     Plaintiffs repeat and re-allege and incorporate by reference the foregoing paragraphs.

59.     In the course of its dealings with Plaintiffs, Defendant has engaged in deceptive conduct in the conduct of business, trade, commerce or the furnishing of a service in this state and constituted a violation of §349 independent of whether Defendants' conduct violated any other law.

60.     Specifically, but without limitation, Defendants' deceptive conduct included:

  a.  Stating that it had a valid basis to deny Plaintiff's despite when it did not;

  b.  Falsely representing that it is not subject to the EFTA;

  c.  Falsely representing that Plaintiff's non-waivable EFTA rights were waivable by asking Plaintiff to enter into a waiver and/or an indemnification agreement in response to his dispute.

61.     Defendants' conduct as alleged herein is "consumer oriented."

62.     Indeed, far from a "one shot transaction," Defendants deals with a large volume of customers who dispute unauthorized charges.

63.     Upon information and belief, Defendants' misconduct as set forth above is part of a recurring policy and practice of falsely alleging that it has performed *bona fide* investigations into fraudulent transactions and falsely alleging that it has a basis to conclude that no fraud has occurred on the accounts of those customers that submit disputes.

64.     These policies and practices have the potential to be repeated with regard to a large number of consumers.

65.     Each of these deceptive acts and practices is one that has a broad impact on consumers.

66.     Due to these violations of NYGBL § 349, Plaintiffs has suffered actual damages and is entitled to actual damages, treble damages, punitive damages, declaratory judgment that Defendants has violated the statute, injunctive relief barring Defendants from henceforth committing the deceptive acts and practices set forth herein, costs, and reasonable attorney's fees.


**FOURTH CLAIM FOR RELIEF**

**(Conversion)**

67.     Plaintiffs repeat and re-allege and incorporate by reference the foregoing paragraphs.

68.     Plaintiffs had a possessory right to the funds in the account.

69.     Under the circumstances set forth herein, the funds constituted personal property.

70.     Green Dot intentionally and without authority assumed and exercised control over Plaintiffs' funds.

71.     Green Dot's dominion over the funds and interference with the funds – including accepting the funds for deposit into the Fraudulent Account it opened under Brian Cerdelli's name – was in derogation of Plaintiffs' rights, including but not limited to Plaintiffs' right to return of the funds.

72.     As a result of Green Dot's actions, Plaintiffs have suffered actual damages, including but not limited to the amount of the funds converted.

**WHEREFORE,** Plaintiffs seeks judgment in her favor and damages against Defendants:

A. awarding Plaintiffs against Defendants actual damages, treble damages, statutory damages, punitive damages, declaratory relief, injunctive relief, costs, and reasonable attorneys' fees; and

B. such other and further relief as may be necessary, just, and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Plaintiffs demand a trial by jury as to all issues so triable.

Dated:  October 9, 2023

/s/ Daniel A. Schlanger
Daniel A. Schlanger
H. Cooper Ellenberg (PHV Pending)
Schlanger Law Group LLP
80 Broad Street
Suite 3103
New York, NY 10004
T: 212-500-6114
F: 646-612-7996
E: dschlanger@consumerprotection.net
E: hellenberg@consumerprotection.net

*Attorney for Plaintiffs*